DENNIS L. KENNEDY
Nevada Bar No. 1462
JOSEPH A. LIEBMAN
Nevada Bar No. 10125
BAILEY-KENNEDY
8984 Spanish Ridge Avenue
Las Vegas, Nevada  89148-1302
(702) 562-8820  Telephone
(702) 562-9921  Facsimile
dkennedy@baileykennedy.com
jliebman@baileykennedy.com

WILLIAM B. FEDERMAN *(will comply with LR IA 10-2 within 45 days)*
FEDERMAN & SHERWOOD
10205 N. Pennsylvania Avenue
Oklahoma City, Oklahoma  73120
(405) 235-1560  Telephone
(405) 239-2112  Facsimile
wbf@federmanlaw.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| TIMOTHY J. FIK, derivatively on behalf of SPECTRUM PHARMACEUTICALS, INC., | : Case No. |
| | : |
| Plaintiff, | : **JURY TRIAL DEMANDED** |
| v. | : |
| RAJESH C. SHROTRIYA, LUIGI LENAZ, GILLES GAGNON, ANTON GUETH, STUART M. KRASSNER, ANTHONY E. MAIDA, KRISHAN K. ARORA, BRETT L. SCOTT, AND JOSEPH KENNETH KELLER, | : |
| Defendants, | : |
| and | : |
| SPECTRUM PHARMACEUTICALS, INC., | : |
| Nominal Defendant. | : |

BAILEY❖KENNEDY
3984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

Page 1 of 36

**INTRODUCTION**

1.     This is a verified shareholder derivative action brought on behalf of Nominal Defendant Spectrum Pharmaceuticals, Inc. ("Spectrum" or the "Company").   The relevant period is August 8, 2012 through the present (the "Relevant Period").   This action is brought against certain of Spectrum's current officers and directors for breaches of fiduciary duties and unjust enrichment.

2.     Spectrum is a biotechnology company with integrated commercial and drug development operations with a focus on hematology and oncology. In the United States, Spectrum primarily markets two oncology drugs, FUSILEV® (levoleucovorin) ("FUSILEV") and ZEVALIN®. In 2011 FUSILEV accounted for $153.1 million of Spectrum's $193 million in total revenues.  In 2012 it accounted for $204.3 million of Spectrum's $267.7 million in total revenues.

3.     Specifically, throughout the Relevant Period, Defendants (defined below) breached their fiduciary duties owed to Spectrum and its shareholders by disseminating false and misleading statements to the investing public in connection with Spectrum's oncology drug FUSILEV, a folate analog used for the treatment of patients with advanced metastatic colorectal cancer, and concealed the impact that the increased availability of a competing generic drug (leucovorin) would have on sales of FUSILEV.  As a result of Defendants' false statements, Spectrum's stock traded at artificially inflated prices during the Relevant Period, reaching a high of $13.05 per share on September 18, 2012.

4.     On March 12, 2013, after the market closed, Defendants caused the Company to issue a press release providing its full-year revenue outlook. The Company reported that sales of FUSILEV, the Company's primary and most important revenue-generating drug, would be dropping significantly due to anticipated changes in ordering patterns for FUSILEV, due in part to the recent stabilization of the folate analog market. The Company reported that sales

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

Page 2 of 36

1   will be approximately $10 to $15 million for the first quarter of 2013, and approximately $80

2   to $90 million for the fiscal year 2013. Additionally, the Company forecasted full-year 2013

3   revenues in the range of $160 to $180 million, much lower than analysts' revenue expectations

4   of $297 million for 2013. The press release stated in relevant part:

> Based upon recent communications with customers, Spectrum Pharmaceuticals
> anticipates a change in ordering patterns of FUSILEV® following the recent
> stabilization of the folate analog market. The Company now expects that
> FUSILEV sales will be approximately $10 to $15 million for the first quarter of
> the year, and approximately $80 to $90 million for the 2013 fiscal year. The
> Company noted that, while hospital sales are shifting to generics, the end-user
> demand for FUSILEV remains stable in the clinics, and the Company continues to
> anticipate solid demand in this segment in 2013.

5.      On this news, Spectrum's stock plummeted $4.64 per share to close at $7.79 per share on March 13, 2013, a one-day decline of 37% on volume of 22.5 million shares.

6.      The true facts, which were known by the Defendants but concealed from the investing public during much of the Relevant Period were as follows:

(a)     Once the availability of leucovorin, a generic folate analog, increased, Spectrum's sales of FUSILEV would plummet.

(b)     The purported advantages of FUSILEV over leucovorin would not be sufficient for clinics and hospitals to continue to opt for the more expensive FUSILEV once leucovorin was available in larger quantities.

(c)     Based upon the above, Defendants lacked a reasonable basis for their overwhelmingly positive statements about the Company and its revenue and earnings.

7.      As a result of Defendants' false statements, Spectrum's stock traded at artificially inflated levels during much of the Relevant Period. However, after the above revelations seeped into the market, the price of the Company's common shares declined substantially, down 40% from their Relevant Period high.

BAILEY❖KENNEDY
3984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

8.     Defendants' conduct was extremely reckless, and has resulted in substantial damages to Spectrum and its stockholders, while management and the Board have continued to reap undeserved compensation. Defendants have also exposed the Company to civil liability as a result of a number of securities fraud class action lawsuits (the "Securities Class Action") pending against the Company and certain of its senior executive officers. The damages to the Company include, among other things, investigatory and litigation costs, including costs for defending the Company in the Securities Class Action. The Company is also exposed to millions of dollars of liability for alleged securities law violations. Finally, certain of the Defendants have been unjustly enriched because during the Relevant Period they sold their personally held Spectrum stock at artificially inflated prices while in possession of nonpublic adverse information concerning the Company and its prospects.

<strong>JURISDICTION AND VENUE</strong>

9.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332(a)(2) in that Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

10.     This action is not a collusive one designed to confer jurisdiction upon a court of the United States that it would not otherwise have.

11.     Venue is proper in this District pursuant to 28 U.S.C. §1391(a) because a substantial portion of transactions and wrongs complained of herein occurred in this District. Further, Defendants participated in board of director meetings or maintain executive offices in this District and have received substantial compensation in this District by engaging in numerous activities and conducting business in this District. Further, Spectrum maintains its principal place of business in this District.

BAILEY❖KENNEDY
3984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

Page 4 of 36

**PARTIES**

12.     Plaintiff Timothy J. Fik is a current shareholder of Spectrum and has continuously held Spectrum stock  during the Relevant Period and through the present. Spectrum essentially has no operations in Delaware and no employees in Delaware.

13.     Nominal Defendant Spectrum is a biotechnology company with integrated commercial and drug development operations with a focus on hematology and oncology. Spectrum is incorporated in the State of Delaware and headquartered in Henderson, Nevada.

14.     Defendant Rajesh C. Shrotriya ("Shrotriya") has served as the Company's Board of Director's Chairman, Chief Executive Officer and President since August 2002 and as a Director of Spectrum since June 2001. From September 2000 to August 2002, Shrotriya served as President and Chief Operating Officer of Spectrum.   Shrotriya also serves as a member of the board of directors of Antares Pharma, Inc. ("Anteres"), an NYSE AMEX-listed drug delivery systems company.   Shrotriya joined Anteres' board in April 2004 and is a member of its compensation committee (since 2007) and governance and nominating committee (since 2007). Prior to joining Spectrum, Shrotriya served as Executive Vice President and Chief Scientific Officer of SuperGen, Inc. ("SuperGen") from November 1996 until August 2000, and as its Senior Vice President and Special Assistant to the President from November 1996 until May 1997.   For 18 years, Shrotriya held various positions at Bristol-Myers Squibb Company ("Bristol-Myers Squibb"), the most recent being Executive Director Worldwide CNS Clinical Research. During the Relevant Period, Shrotriya sold 735,993 shares of his personally held Spectrum common stock for proceeds of nearly $8.8 million. This was in addition to total compensation for 2011 of $25.2 million and a $1.6 million cash bonus in fiscal 2012.[1]   Spectrum has disclosed in its SEC filings that Shrotriya is not considered -- under the

---

[1] The *Vegas, Inc.* reported on March 26, 2013 that Defendant Shrotriya was the highest paid executive in the Las Vegas Valley in 2012, earning more than Gary Loveman, Steve Wynn and Sheldon Adelson.

BAILEY❖KENNEDY
3984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

1  listing standards of the NASDAQ Global Market and rules promulgated by the SEC -- an

2  independent director.   Shrotriya's daughter-in-law is a current employee of the Company.

3  Shrotriya is named as a defendant in the Securities Class Action.  On information and belief,

4  Defendant Shrotriya is a citizen of the State of California.

5       15.    Defendant Luigi Lenaz ("Lenaz") has been a director of Spectrum since June

6  2010. Lenaz served as Spectrum's Chief Scientific Officer from February 2005 to June 2008

7  and as President of Spectrum's Oncology Division from 2000 to 2005. Since retiring as

8  Spectrum's Chief Scientific Officer in June 2008, Lenaz provided consulting services to

9  Spectrum from June 2008 to June 2010. From 1997 to 2000, Lenaz served as Senior Vice

10  President of Clinical Research, Medical Affairs at SuperGen. From 1978 to 1997, Lenaz held

11  several senior management positions with Bristol-Myers Squibb, including Senior Vice

12  President of Oncology Franchise Management from 1990 to 1997 and Director of Scientific

13  Affairs, Anti-Cancer from 1985 to 1990.  Spectrum has disclosed in its SEC filings that Lenaz

14  is not considered -- under the listing standards of the NASDAQ Global Market and rules

15  promulgated by the SEC -- an independent director.   On information and belief, Defendant

16  Lenaz is a citizen of the State of Pennsylvania.

17       16.    Defendant Gilles Gagnon ("Gagnon") has served on the Company's Board of

18  Directors since March 27, 2012. Gagnon is currently President of Spectrum Pharma Canada

19  Inc., an affiliate of Spectrum, and has served in such position since September 2008.  Spectrum

20  has disclosed in its SEC filings that Gagnon is not considered -- under the listing standards of

21  the NASDAQ Global Market and rules promulgated by the SEC -- an independent director.

22  On information and Belief, Defendant Gagnon is a citizen of the State of California.

23       17.    Defendant Anton Gueth ("Gueth") has served as a Director of Spectrum since

24  March 27, 2012.   Gueth serves as a member of the Company's Audit and Nominating and

25  Governance Committees.  Gueth also serves on the board of directors of Anteres, along with

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

Page 6 of 36

1     Shrotriya. Gueth joined Anteres' board in October 2003 and serves as chairman of its

2     compensation committee (since 2003) and as a member of its audit committee and governance

3     and nominating committee (since 2005). On information and belief, Defendant Gueth is a

4     citizen of the State of California.

5           18.    Defendant Stuart M. Krassner ("Krassner") has served as a director of Spectrum

6     since December 2004 and was previously a member of its Scientific Advisory Board from

7     1996 to 2001. Krassner serves as a member of the Company's Audit and Nominating and

8     Governance Committees and Chairman of the Compensation Committee. On information and

9     belief, Defendant Krassner is a citizen of the State of California.

10          19.    Defendant Anthony E. Maida ("Maida") has served as a Director of Spectrum

11     since December 2003. During the Relevant Period, Maida sold 30,000 shares of his personally

12     held Spectrum stock for proceeds of approximately $408,399. Maida serves as a member of

13     the Company's Compensation Committee and the Chairman of the Audit and Nominating and

14     Governance Committees. On information and belief, Defendant Maida is a citizen of the State

15     of California.

16          20.    Defendant Krishan K. Arora ("Arora") has served as a director of Spectrum

17     since June 2010. Prior to his election to the Board, Arora had been providing consulting

18     services to Spectrum since February 2010. Arora serves as a member of the Company's Audit,

19     Nominating and Governance and Compensation Committees. On information and belief,

20     Defendant Arora is a citizen of the State of New Jersey.

21          21.    Defendant Brett L. Scott ("Scott") is, and at all relevant times was, the

22     Company's Acting Chief Financial Officer ("CFO") and Senior Vice President. During the

23     Relevant Period, Scott sold 6,000 shares of his personally held Spectrum stock for proceeds of

24     $72,000. Scott was also compensated in excess of $1.5 million for 2011 and received a cash

25

BAILEY❖KENNEDY
3984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

Page 7 of 36

1    bonus in fiscal 2012 for $50,000.. Scott is named as a defendant in the Securities Class Action.

2    On information and belief, Defendant Scott is a citizen of the State of California.

3        22.    Defendant Joseph Kenneth Keller ("Keller") is, and at all relevant times was, the

4    Company's Chief Operating Officer ("COO") and Executive Vice President. Keller is named

5    as a defendant in the Securities Class Action. Keller received a cash bonus of $213,000 in

6    fiscal 2012. On information and belief, Defendant Keller is a citizen of the State of California.

7        23.    Defendants Shrotriya, Arora, Krassner, Lenaz, Maida, Gueth, Gagnon, Scott

8    and Keller are collectively referred to herein as the "Defendants."

9                               **DEFENDANTS' DUTIES**

10       24.    By reason of their positions as officers and/or directors, and fiduciaries of

11   Spectrum and because of their ability to control the business and corporate affairs of Spectrum,

12   Defendants owed Spectrum and its shareholders fiduciary obligations of good faith, loyalty,

13   and candor, and were and are required to use their utmost ability to control and manage

14   Spectrum in a fair, just, honest, and equitable manner. Defendants were and are required to act

15   in furtherance of the best interests of Spectrum and its shareholders so as to benefit all

16   shareholders equally and not in furtherance of their personal interests or benefit. Each director

17   and officer of the Company owed and owes to Spectrum and its shareholders the fiduciary duty

18   to exercise good faith and diligence in the administration of the affairs of the Company and in

19   the use and preservation of its property and assets, and the highest obligations of fair dealing.

20       25.    Defendants, because of their positions of control and authority as directors

21   and/or officers of Spectrum, were able to and did, directly and/or indirectly, exercise control

22   over the wrongful acts complained of herein. Because of their advisory, executive, managerial,

23   and directorial positions with Spectrum, each of the Defendants had knowledge of material

24   non-public information regarding the Company.

25

BAILEY❖KENNEDY
3984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

Page 8 of 36

26.     To discharge their duties, the officers and directors of Spectrum were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors of Spectrum were required to, among other things:

(a)     Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of the Company's business;

(b)     Exercise good faith to ensure that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements; and

(c)     When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

27.     Additionally, according to Spectrum's Audit Committee Charter the purpose of the Audit Committee is, among other things, to "oversee and monitor...[t]he Company's compliance with legal and regulatory requirements."

**BACKGROUND**

28.     Spectrum is a biotechnology company with integrated commercial and drug development operations with a focus on hematology and oncology. In the United States, it markets two oncology drugs, FUSILEV and ZEVALIV®, and has two drugs, apaziquone and belinostat, in late-stage development, along with a pipeline of drug candidates.

29.     FUSILEV is a folate analog formulation and the pharmacologically active isomer (the levo-isomer) of the racemic compound, levoleucovorin. FUSILEV rescue is indicated after high- dose methotrexate therapy in patients with osteosarcoma. FUSILEV has been designated as an orphan drug for its approved indications.

BAILEY✦KENNEDY
3984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

Page 9 of 36

30.     The key competitive formulation to FUSILEV was and is a generic drug, leucovorin.    Leucovorin is produced by Bedford Laboratories, Sagent Pharmaceutical ("Sagent"), Teva Pharmaceuticals ("Teva") and APP Pharmaceuticals.

31.     In 2008 and 2009, leucovorin supplies declined.    According to the American Society of Health-System Pharmacists ("ASHP"), an organization that monitors drug shortages, Teva had a leucovorin shortage due to manufacturing delays, APP and Sagent were short on leucovorin due to increased demand, and Bedford Laboratories stopped production due to expansion of its facility.

32.     These shortages of leucovorin, which were the subject of Food and Drug Administration ("FDA") alerts, represented a huge opportunity for Spectrum, as it was able to increase its sales of FUSILEV as it had the drug readily available. Sales rapidly increased, with revenues for 2010 up 160% over 2009. However, analysts expressed concern that sales of FUSILEV would suffer once leucovorin supplies increased. This became particularly important in 2012, as increased availability of leucovorin grew increasingly imminent, especially since Sagent began selling the drug in October 2012 after receiving FDA approval to market the drug one month earlier. Defendants continually dismissed and ignored such concerns, claiming sales of FUSILEV would not be adversely affected by increased supplies of leucovorin.

33.     On December 9, 2011, Defedants caused the Company to issue a press release entitled "Spectrum Pharmaceuticals Affirms Strong Patent Protection for FUSILEV® (levoleucovorin) Through December 31, 2019," which stated in relevant part:

> Spectrum Pharmaceuticals, a biotechnology company with fully integrated commercial and drug development operations with a primary focus in hematology and oncology, affirmed today that the U.S. Food & Drug Administration (FDA) has granted FUSILEV® (levoleucovorin) "Orphan Drug" exclusivity for use in combination chemotherapy with 5-fluorouracil in the palliative treatment of patients with advanced metastatic colorectal cancer. In addition, FUSILEV therapeutic compositions are protected under a US Patent which expires at the end of December 2019. This is a composition of matter patent claiming a therapeutically effective amount of purified levoleucovorin. The Company has already filed a patent extension application.

BAILEY❖KENNEDY
3984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

"We are aware that a company has filed an Abbreviated New Drug Application for the generic version of FUSILEV," said Rajesh C. Shrotriya, MD., Chairman, Chief Executive Officer, and President of Spectrum Pharmaceuticals. "While we recognize that such filings are not unusual given that FUSILEV has reached significant revenue milestones, we are confident that our exclusivity position is strong. Our Orphan Drug exclusivity protects FUSILEV from generic levoleucovorin competition for the next seven years. In addition, we believe our intellectual property protecting FUSILEV is strong and we plan to vigorously defend it to the full extent of the law."

## DEFENDANTS' FALSE AND MISLEADING STATEMENTS
## ISSUED DURING THE RELEVANT PERIOD

34.     On August 8, 2012, Defendants caused the Company to issue a press release announcing its second quarter 2012 financial results. The Company reported net income of $18.1 million, or $0.29 diluted earnings per share ("EPS"), and revenue of $68.7 million for the quarter ending June 30, 2012. Additionally, the Company reported record FUSILEV revenue of $56.6 million. The press release stated in part:

"The second quarter was a historic period for Spectrum, during which we had record revenues and strong profits," said Rajesh C. Shrotriya, MD, Chairman, Chief Executive Officer, and President of Spectrum Pharmaceuticals. "These are exciting times at Spectrum, and we expect several key catalysts before the end of the year. Based on our current product portfolio, strong financial position, robust pipeline and active business development, we are in a formidable position to further grow our company over the next 5 years."

35.     After releasing its second quarter 2012 financial results on August 8, 2012, Defendant Shorotriya, on behalf of Spectrum, hosted a conference call with analysts, investors and media representatives.   Defendant Scott was also present on the call during which Defendant Shrotriya represented:

[ANALYST:] Raj, I think one of the other questions linked to FUSILEV, just pick up where Joe Pantginis left off is, that there's a common perception that once the generic leucovorin shortage is alleviated, that basically you guys are toast. And so what I'd like to hear from you is number one, what's your understanding about the recent developments in the leucovorin shortage? And number two, assuming that at some point in the future the generic leucovorin does make it back to the marketplace, how does Spectrum continue to gain further share against generic equivalent?

[SHROTRIYA:] Mike, that's a very good question. First thing let me say that it's a pity that, that question keeps coming up for the last seven or eight quarters. I've

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

heard that the dating for approval on April 28 last year, when we got approval, somebody put out a blog saying that this drug is going to be — Spectrum is going to go down the hill and we lost a huge market cap on that day, on a day when we got approval for FUSILEV.

Quarter after quarter, around our earnings release there are some blogs [that] appear and misinformation appears. And that has absolutely no basis. That information appears with trying to manipulate our stock or some malicious intent. In fact, numbers speak for themselves. I think people have to understand that FUSILEV is not leucovorin generic, which is a mixture of 50% biologically inactive dextro form and 50% levo form. That drug has been around for 60 years.

In Europe, there is no shortage of generic leucovorin. And still the sales of FUSILEV or levoleucovorin in Europe and Japan ex-US are close to between $150 million, $200 million a year. And this drug has been available for over 15 years ex- US. So we believe, not only the fact that FUSILEV got approval in 2011 as compared to generic leucovorin approval of 1952, the fact that ZEVALIN has a unique genocode should clearly tell people who are educated enough to understand the marketing and selling of oncology drugs, that it is differentiated product and it has nothing to do with generic leucovorin. That's number one.

Number two, generic companies come in and out of market. The shortage of generic leucovorin, why is it shortage generic leucovorin? There are many companies that make it. They will compete with each other. There are companies that will get approval, more companies will get generic approval. In fact, as generic leucovorin supplies increase in the marketplace, so in other words, the shortage is abating, FUSILEV sales are continuing to grow. So the penetration and traction of FUSILEV is sustainable. And I believe the generic companies will compete with themselves, not with FUSILEV.

36.     Immediately after this news, Shrotriya began selling his shares of Spectrum stock, selling $2.6 million worth of Spectrum stock in mid August 2012.

37.     On November 7, 2012, Defendants caused the Company to issue a press release announcing third quarter 2012 financial results. The Company reported net income of $21.3 million, or $0.33 diluted EPS, and revenue of $69 million for the quarter ending September 30, 2012. Additionally, the Company reported expectations of pro-forma revenue to exceed $300 million in 2012, up from previous guidance of around $300 million. The press release stated in relevant part:

"The third quarter marks the eighth consecutive profitable quarter that has helped Spectrum establish a great foundation and platform to attain additional growth," said Rajesh C. Shrotriya, M.D., Chairman, President and Chief Executive Officer of Spectrum Pharmaceuticals, Inc. "Diversification is key to our strategy, and we took a major step in that direction by completing the acquisition of Allos in

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

Page 12 of 36

September and adding a third product, FOLOTYN, to our portfolio. Four years ago we were primarily a FUSILEV company with limited cash. Today, Spectrum has FUSILEV, worldwide ZEVALIN, and FOLOTYN, along with a robust, maturing pipeline, and a strong balance sheet."

38.     After releasing its third quarter 2012 financial results on November 7, 2012, Defendants Keller, Shrotriya and Scott, on behalf of Spectrum, hosted a conference call with analysts, investors and media representatives, during which they represented the following:

[KELLER:] The second area I want to cover today is the progress we made in building and refitting our commercial organization to accelerate the growth of our three marketed oncology drugs. We are starting this process from a solid foundation. Because of changes in buying patterns, there can be some fluctuation in FUSILEV sales, as we saw this quarter. Importantly, ***FUSILEV demand remains strong despite readily-available supplies of generic leucovorin.*** Market research shows that 75% of physicians say that generic leucovorin is available without difficulty. It is clear that physicians are continuing to choose FUSILEV even when other options are available. This quarter there was a 13% increase in the number of accounts ordering FUSILEV. When we look at market penetration over the past 12 months, FUSILEV penetration is up from 29% in the last quarter to 31 % in this quarter, and we believe there is room for improvement.

*        *        *

[SHROTRIYA:] I'm looking for a day when the market is over-flooded with all genetic Leucovorin supplies and they fight with each other and kill each other and Spectrum's FUSILEV will keep performing on its growth trajectory that it has been doing in the past. And all the naysayers, all the people who believe that somehow FUSILEV sales are going to go fall off the cliff, we have proven them wrong for eight quarters and you must take my word for it. We have proved it forever.

39.     On November 15, 2012, Defendant Shrotriya, on behalf of Spectrum, attended a Credit Suisse Group AG Healthcare Conference with analysts, investors and media representatives, during which he represented the following:

As you will see, our FUSILEV sales have been growing consistently quarter after quarter. The reason for that is that we have more clinics, more clinicians, and more physicians ordering FUSILEV quarter after quarter. In fact, our estimate is that in last quarter 31% penetration has occurred of our drug and there are more accounts ordering. Repeated orders are coming for FUSILEV.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

Page 13 of 36

We have a dedicated sales force that promotes FUSILEV. In fact, a big thing now all of our sales force, combined sales force of Allos Therapeutics and combined sales force of Spectrum Pharmaceuticals, they both will now together promote FUSILEV. Every sales rep in the Spectrum while [sic] now promote all three drugs — FUSILEV, ZEVALIN, and Folotyn.

40.     On December 12, 2012, Defendant Shrotriya, on behalf of Spectrum, attended an Oppenheimer Holdings Inc. Healthcare Conference with analysts, investors and media representatives, during which he represented the following:

[SHROTRIYA:]     Let me talk briefly about FUSILEV. FUSILEV is a differentiated, only branded folate analog that is approved for metastatic colorectal cancer. Colorectal cancer is the third-most frequently diagnosed cancer in men and women, and it is the second-leading cause of cancer death in men and women in the United States.

And as you will see, this latest study that was published in JCO that shows in a head-to-head comparison against generic leucovorin, which is a mixture of dextro form and levo form, a 50-50 mixture, it shows that the patients on FUSILEV live longer and, in fact, they had less side effects. It is statistically significant, less side effects.

*     *     *

[AUDIENCE MEMBER:] I was curious about pricing and pricing discounts. Are you being forced to offer discounts to larger groups?

[SHROTRIYA:] We do not give any special discounts. Whatever discounting is practiced in the health industry, that's all we do.

For example, one of the ways you can judge us, the way the average sales price is. If the company discounts, that adversely affects the average sales price of the drug. Our FUSILEV sales price, for example, has been going up. The average sales price of FUSILEV has grown from $160 per vial to $190 per vial over the three quarters. So, therefore, you can see that it has not adversely affected the ASP. This Company would go out and give huge discounts to anybody, then it will erode the average sales price.

41.     Following these statements, Shrotriya sold $4.2 million worth of his Spectrum stock at the end of December 2012.

42.     On February 21, 2013, Defendants caused the Company to issue a press release announcing its fourth quarter and full-year 2012 financial results. The Company reported net income of $8.6 million, or $0.13 diluted EPS, and revenue of $70.1 million for the fourth

BAILEY❖KENNEDY
3984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

quarter ended December 31, 2012. Additionally, the Company reported net income of $94.5 million, or $1.46 diluted EPS, and revenue of $267.7 million for the period ended December 31, 2012. FUSILEV sales for the year were $204.3 million. Additionally, the press release noted that continuing to gain FUSILEV market share, grow revenue, and initiate additional clinical studies to expand indications were "key catalysts" for 2013. The press release stated in relevant part:

> "With substantial year-over-year sales growth, 2012 stands out as a transformational year for Spectrum and provides a solid platform for anticipated strong growth in sales and operating income in 2013," stated Rajesh C. Shrotriya, M.D., Chairman, President and Chief Executive Officer of Spectrum Pharmaceuticals, Inc. "FUSILEV® sales volume was up in the fourth quarter in a competitive environment. We also diversified our commercial portfolio through the addition of FOLOTYN® last fall, and FOLOTYN demonstrated robust sales in the most recent quarter. As we enhanced our global footprint and increased our commercial and market penetration, we also expanded our senior commercial team and implemented a new structure to allow our sales force to be even more customer-facing."

43.     After releasing its fourth quarter and full-year 2012 financial results on February 21, 2013, Defendants Shrotriya and Keller, on behalf of Spectrum, hosted a conference call with analysts, investors and media representatives, during which defendants represented the following:

> [SHROTRIYA:] We are very excited about the outlook for the Company. Last year, FUSILEV grew 56% in unit volume and 33% in dollar sales. FUSILEV demand remains strong, and we continue to see opportunities to expand its use.

> *     *     *

> [KELLER:] In the second half of 2012, our FUSILEV business shifted more towards accounts qualified for government pricing especially 340B purchasing. While in 2012, FUSILEV unit sales increased approximately 56% over 2011, government rebates inclusive of 340B chargebacks increased approximately tenfold from $3.8 million in 2011 to $47.3 million in 2012. Our market research shows that this shift is largely complete, and going forward, we expect stable demand in this segment. Currently, approximately 75% of total FUSILEV business resides in the clinic segment. This creates a very strong base of FUSILEV business on which we can build upon and focus our promotional efforts against.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

Page 15 of 36

1    To reinforce this, I'm pleased to share with you that the number of clinics
     purchasing FUSILEV continues to grow and end-user demand year-to-date in
2    2013 is higher than in December of 2012. We expect this trend to continue
     throughout 2013.
3
                                    *        *        *
4
5    So when we look at FUSILEV business right now, what we see is end-user
     demand, customer generated demand is very, very stable right now. In fact, when
6    you look at the first few weeks of this year, and we have data all the way through
     January, the demand is actually higher than it was in December. So we feel that
7    the underlying demand is very stable. Net purchasing patterns do change, but the
     underlying demand is very, very solid.
8
     The second point I think that will help to clarify it is today, 75% of FUSILEV
9    business is in the clinic setting. That is a setting that is very, very sticky for
     FUSILEV. Once accounts are using this product, it is very rare rarely do they go
10   back to generic Leucovorin. So that gives us a nice place to build upon and really
     use our new commercial organization to drive and grow the business in that
11   segment from where we are right now.

12        44.    On March 12, 2013, Spectrum's stock closed at $12.43 per share. After the

13   market closed, Defendants caused the Company to issue a press release providing its full-year

14   revenue outlook. The Company reported that sales of FUSILEV, the Company's most revenue-

15   generating drug, would be dropping significantly due to anticipated changes in ordering

16   patterns for FUSILEV, due in part to the recent stabilization of the folate analog market. The

17   Company reported sales will be approximately $10 to $15 million for the first quarter of 2013,

18   and approximately $80 to $90 million for the fiscal year 2013. Additionally, the Company

19   forecast full-year 2013 revenues in the range of $160 to $180 million, much lower than

20   analysts' revenue expectations of $297.33 million for 2013. The press release stated in relevant

21   part:

22        Based upon recent communications with customers, Spectrum Pharmaceuticals
          anticipates a change in ordering patterns of FUSILEV® following the recent
23        stabilization of the folate analog market. The Company now expects that
          FUSILEV sales will be approximately $10 to $15 million for the first quarter of
24        the year, and approximately $80 to $90 million for the 2013 fiscal year The
          Company noted that, while hospital sales are shifting to generics, the end-user
25        demand for FUSILEV remains stable in the clinics, and the Company continues to
          anticipate solid demand in this segment in 2013. The Company believes the
          majority of the impact from the change in ordering patterns will be reflected in the

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

Page 16 of 36

first half of 2013 and expects to return to a run-rate that more closely aligns with end-user demand by the end of the year.

45.     On this news, Spectrum's stock plummeted $4.64 per share to close at $7.79 per share on March 13, 2013, a one-day decline of 37% on volume of 22.5 million shares, 28 times Spectrum's average trading volume.

46.     A March 13, 2013 article posted on the investment website Motley Fool entitled "Spectrum Pharmaceuticals: When Being "Long" Backfires!" provided the following additional details in relevant part:

**Longs Notice Problems, When it's Too Late**

This is a company where sales of its best-selling drug FUSILEV were obviously under pressure from generics, and despite the company's denials, it was just as clear that discounting was being used as a tactic to maintain sales stability.

According to Thomson Financial, there were 14 insider transactions in the last six months, with 13 being insiders dumping their shares. These insiders sold 767,743 shares and most were from the company's CEO Rajesh Shrotriya.

**When the Rumored Problems Come to Surface**

So what was it that created an afterhour loss of 40%? Obviously, it was regarding sales guidance for FUSILEV. However, it wasn't just weak guidance; it was guidance that could not have been mistaken. There was no way that the company did not see this coming. For example, the company saw sales of $44.6 million and $204 million for FUSILEV in Q4 and for 2012. Now, the company is expecting sales of just $10 million-$15 million in Q1 and $80 million-$90 million for 2013. Personally, this is the largest and most significant change in direction that I have ever seen in the 15 years that I have been a retail investor, and covering my own investments and the space.

What makes this pill even tougher to swallow is that just a few weeks ago management was saying that there would be sales growth in 2013. Therefore, how could the tide change so fast? How did they not see this coming? In my opinion, there are no reasonable answers to these questions, but rest assure, the SEC, analysts, and countless attorneys will find out. At first glance there looks to be various signs of fraud, misrepresentation, and misleading guidance on behalf of the company. Therefore, although it hurts to admit when you're wrong, sometimes it's better to admit the obvious, and live to fight another day.

BAILEY❖KENNEDY
3984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

Page 17 of 36

**With a 40% Loss Why Shouldn't I Buy?**

There will be many who look at the performance and the guidance issued by Spectrum and believe that it presents opportunity, and it's very possible that these people could be right. However, at this point, it's not an issue of valuation, but rather trust, and trust in management. Once a company loses the trust of investors it is quite difficult to regain. There's no overnight solution.

Consider the fact that Spectrum now expects total revenue of $160 million-$180 million for 2013; therefore with a 40% loss it's trading with a future price/sales of about $2.60. In my opinion, this is too expensive for a company that just slashed full-year sales for its best-selling drug by 60%, and much of this guidance is based on the company's guidance that sales of Folotyn and Zevalin will rise in 2013. However, can we trust the company with this guidance? My answer is no, not until proven otherwise.

"He [Lenaz] was in oncology division of Bristol Myers for 22 years. And he has followed me in every company I've worked for, SuperGen, and then Spectrum. When he retired from here, he became Scientific Advisor to the Company, and now he is on the Board of the Company."

47. On March 20, 2013, Defendants Shrotriya and Keller presented on behalf of the Company at the 25th Annual Roth Conference. During their presentations they attempted to explain the Company's guidance miss. However, from their statements it is clear that it was what Defendants and the Company expected:

[Keller:] So to understand our business -- so here's what the announcement was. We expected Fusilev revenue this year to be about $200 million. We reduced that to $80 million to $90 million this year. We expect revenue to be between $10 million and $15 million in the first quarter, and then it should ramp up in the second part of the year.

What happened here is we missed something very, very important. On this next slide I'll tell out what happened and why it happened. So when you look at our Fusilev business, for Fusilev, Spectrum sales all of our product to wholesalers and then the wholesalers take that product and they distributed to the thousands of hospitals and clinics across the United States. The way our business model has been working is in the last two weeks of every quarter, we would go to our wholesalers, and we would obtain the orders for their anticipated use in the next quarter.

BAILEY❖KENNEDY
3984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

Page 18 of 36

1

*So what happened here is we went out, our team went out and went to speak to*
*our wholesalers about the orders for Q1. We were surprised when the*
2
*wholesalers came back and said you know what, we have enough product on*
*our shelves. We are going to wait and watch a little bit here and delay our*
3
*purchases, anticipating of purchasing drug in Q2.* So the miss here was we
didn't have the whole 360 view of our business. We knew what we were shipping
4
to our wholesalers quarter after quarter, but what we didn't know is exactly what
the end-users, the thousands of hospitals and clinics, were actually using.

5

6
So when you look at our business, there's two pieces of it. Our end-users are
hospitals and clinics. That is the part of the business that we didn't truly
understand. So kind of stepping back, I think my diagnosis here is that with the
7
growth that Spectrum has delivered over the last three years with all the activity
and all the promise of our pipeline, the top line -- those growth expectations, we
8
didn't -- in essence, they outpaced the growth of our internal capabilities.

9
                              *        *        *

10
So let me just turn a little bit more details onto Fusilev. So to understand our
business, this is the data that we didn't have that we now have. And there's two
11
lines here. I'll just point them out right here. The top line, that is overall Fusilev
demand. That is Fusilev sales to clinics and hospitals, and this goes back the last
12
18 weeks. The light blue line underneath are sales to the clinics.

13
So two things I would like to point out for you. First, in the last 18 weeks, the
demand in the clinics is relatively stable. It hasn't moved. Now you will see the
14
gap between those two lines is getting slightly smaller *because we are losing*
*business in the hospitals and that is not a surprise. That is what we that is what*
15
*we thought would happen.*

16
*The hospital market is a price-sensitive market, and as the supply of generic*
*racemic leucovorin ebbs and flows when it is available, our business in the*
17
*hospitals will decline.* But we always believed that our business and the clinics
will be sticky, and in fact what you're seeing is we are not losing business in the
18
clinics.

19
So what happened in Q1 was not a function of our business falling off the cliff. It
is a function of we didn't connect the dots between what was in the wholesalers
20
and end demand and, in essence, inventories crept up and we're missing an order
in Q1. We expect in Q2 sales will come back slightly, but we don't know exactly
21
what is in inventory. So the guidance that we've given this year is Q1 and Q2
being soft, and in the second half of the year we expect that orders from the
22
wholesalers, our sales, will be more aligned with the end-user use. That is where
you go from $10 million to $15 million in Q1 to $80 million and $90 million
23
throughout the year.

24
                              *        *        *

25
You just said it very well. You should come on up here. *We always believed that*
*the hospital business would be the most sensitive business, and that business*

BAILEY❖KENNEDY
3984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

*would decline when the availability of generic leucovorin got consistent, and that is what we are seeing. We are seeing the hospital business decline.*

We believed because we have a separate J-code, because we have half the dose at the clinics, and because of reimbursement that the clinics would be more steady, and that is exactly what we are seeing. So in the past -- today 75% of Fusilev business is in the clinics, as this slide shows. In the past that wasn't true.

*At the height of the generic leucovorin shortage going back to the middle of last year, that number wasn't 75%. It was more like 60%. So think about a 60/40 split of the business way back. So as the hospital goes down, eventually -- we don't think the hospital business will go completely away, but we do expect it to continue to decline.*

When you look at this line right here -- and for those that can't see it, I'm pointing to the underlining clinic business -- that is a steady-state business. *Looking at today's prices, that business puts us at just about a little over $25 million a quarter in net sales. So if the hospital business goes all away, that is what you are left with.*

\*     \*     \*

So it's two things. Remember, clinics -- hospitals have one thing in mind, obviously taking great care of patients, but also the people ordering drugs there are -- it is all about price sensitivity. It is all about cost focus.

(emphasis added).

48.     The true facts, which were known by the Defendants but concealed from the investing public during the Relevant Period, were as follows:

(a)     Once the availability of leucovorin increased, Spectrum's sales of FUSILEV would plummet.

(b)     The purported advantages of FUSILEV over leucovorin would not be sufficient for clinics and hospitals to continue to opt for the more expensive FUSILEV once leucovorin was available in larger quantities.

(c)     Based upon the above, Defendants lacked a reasonable basis for their positive statements about the Company and its revenue and earnings during the Relevant Period.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

49.     As a result of Defendants' false statements, Spectrum stock traded at artificially inflated levels during the Relevant Period. However, after the above revelations seeped into the market, the Company's shares were hammered by massive sales, sending them down 40% from their Relevant Period high.  The Company's market capitalization fell from $740.08 million on March 12 to $463.82 million over the next few days.  Not surprisingly, multiple securities class actions lawsuits have been filed against the Company and Defendants Shrotriya, Scott and Keller for alleged violations of federal securities laws.

## DERIVATIVE AND DEMAND FUTILITY
## ALLEGATIONS FOR THE BOARD OF SPECTRUM

50.     Plaintiff brings this action derivatively in the right and for the benefit of Spectrum to redress injuries suffered and to be suffered by Spectrum as a result of the breaches of fiduciary duty by the Defendants.

51.     Plaintiff will adequately and fairly represent the interests of Spectrum and its shareholders in enforcing and prosecuting its rights.

52.     As a result of the facts set forth herein, Plaintiff has not made a demand on the Spectrum Board of Directors to institute this action against the Defendants.  Such demand would be a futile and useless act because the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

53.     Defendants who are currently the members of the Spectrum's Board are Defendants Shrotriya, Lenaz, Gagnon, Gueth, Krassner, Maida and Arora (the "Director Defendants").

54.     The Director Defendants face a substantial likelihood of liability in this action because they knew or should have known that they caused or allowed Spectrum to repeatedly issue false and misleading statements concerning the prospects of Spectrum's core product FUSILEV. Because of their advisory, executive, managerial, and directorial positions with

BAILEY✦KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

Page 21 of 36

Spectrum, each of the Defendants had knowledge of material non-public information regarding the Company and was directly involved in the operations of the Company at the highest levels. The Board is obligated to become and remain informed about the Company and the Board has full and unrestricted access to any relevant records of the Company.  FUSILEV is and was the Company's core product.  In 2011 FUSILEV accounted for $153.1 million of Spectrum's $193 million in total revenues.   In 2012 it accounted for $204.3 million of Spectrum's $267.7 million in total revenues. Thus, the Company's officers and directors would be well aware of all developments with respect to the product.   Specific details of the Company's core product that ultimately determined the future viability and profitability of the entire Company would undoubtedly have been shared at the Company's Board meetings and discussed at length.

55.    At the March 20, 2013 25th Annual Roth Conference, Defendant Keller admitted:

- The Company was *"losing business in the hospitals and that is not a surprise. That is what we that is what we thought would happen."*

- *"The hospital market is a price-sensitive market, and as the supply of generic racemic leucovorin ebbs and flows when it is available, our business in the hospitals will decline."*

- *"We always believed that the hospital business would be the most sensitive business, and that business would decline when the availability of generic leucovorin got consistent, and that is what we are seeing. We are seeing the hospital business decline."*

56.    Defendant Shrotriya knowingly or recklessly and in bad faith made false and misleading statements about the Company's core product, FUSILEV. The remainder of Director Defendants either knew or should have known, in the absence of culpable recklessness and bad faith, of the false and misleading statements that were issued on the Company's behalf and took no steps in a good faith effort to prevent or remedy that situation,

BAILEY❖KENNEDY
3984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

1  instead allowing such statements to continue.  The Director Defendants action proximately

2  caused millions of dollars in damages to Spectrum.

3  **Defendants Shrotriya and Maida Have Profited Through Illegal Insider Trading**

4      57.      During the Relevant Period Defendants Shrotriya and Maida sold millions of

5  dollar's worth of their personally held Spectrum stock while in possession of the adverse non-

6  public information concerning the Company alleged herein.

7      58.      During the period August 8, 2012 through March 12, 2013, Defendant Shrotriya

8  sold 735,993 shares of his personally held Spectrum common stock for proceeds of nearly $8.8

9  million based on his possession of material, adverse, non-public "core operational" information

10  regarding the Company's operations.   After a decade of not selling any of his Spectrum shares,

11  Shrotriya began unloading his shares in August 2012.  In an attempt to deflect attention from

12  his sudden and massive insider sales, Shrotriya announced that his sales were for "tax and

13  estate planning purposes."  Shrotriya is directly interested in a demand due to his receipt of

14  material, personal financial benefits from challenged insider trading transactions which were

15  not shared with Spectrum shareholders.  Accordingly, demand upon Shrotriya is futile

16      59.      During the period August 8, 2012 through March 12, 2013, Defendant Maida

17  sold 30,000 shares of his personally held Spectrum stock for proceeds of approximately

18  $408,399 based on his possession of material, adverse, non-public "core operational"

19  information regarding the Company's operations.  Maida is directly interested in a demand due

20  to his receipt of material, personal financial benefits from challenged insider trading

21  transactions which were not shared with Spectrum shareholders.  Accordingly, demand upon

22  Maida is futile.

23

24

25

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

Page 23 of 36

**The Members of the Board of Directors Lack Independence**

**Defendant Shrotriya Lacks Independence**

60.   Defendant Shrotriya serves as the Company's Chairman and CEO, pursuant to which he has received and continues to receive substantial monetary compensation and other benefits.   For instance Shrotriya received compensation of $25.2 million in 2011.  Because of Shrotriya's employment with the Company he is not considered an independent director. Spectrum has disclosed in its SEC filings that Shrotriya is not considered -- under the listing standards of the NASDAQ Global Market and rules promulgated by the SEC -- an independent director.   Thus, Defendant Shrotriya is incapable of impartially considering a demand to commence and vigorously prosecute this action.

**Defendant Lenaz Lacks Independence From Shrotriya**

61.   Defendant Lenaz has worked with and served as a colleague and subordinate of Shrotriya for many years.  Prior to joining Spectrum's Board in June 2010 Lenaz provided consulting services to Spectrum from June 2008 to June 2010   Lenaz served under Shrotriya as Spectrum's Chief Scientific Officer from February 2005 to June 2008 and as President of Spectrum's Oncology Division from 2000 to 2005. Prior to that Lenaz served as Senior Vice President of Clinical Research, Medical Affairs at SuperGen -- for which Shrotriya served as Executive Vice President and Chief Scientific Officer -- from 1997 to 2000.  Even before that Lenaz and Shrotriya worked together at Bristol-Myers Squib.  At the March 20, 2013 Roth Conference, Defendant Shrotriya remarked to analysts:

> "He [Lenaz] was in oncology division of Bristol Myers for 22 years. And he has followed me in every company I've worked for, SuperGen, and then Spectrum. When he retired from here, he became Scientific Advisor to the Company, and now he is on the Board of the Company."

62.   It is obvious that Shrotriya was largely responsible for Lenaz's professional success.  Moreover, Spectrum has disclosed in its SEC filings that Lenaz is not considered --

BAILEY❖KENNEDY
3984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

1  under the listing standards of the NASDAQ Global Market and rules promulgated by the SEC --

2  an independent director.   Thus, Defendant Lenaz is incapable of impartially considering a

3  demand to commence and vigorously prosecute this action against Shrotriya.

4  **Defendant Gagnon Lacks Independence From Shrotriya**

5  63.   Gagnon is currently President of Spectrum Pharma Canada Inc., an affiliate of

6  Spectrum, and has served in such position since September 2008.   Thus, Gagnon is beholden to

7  Shrotriya for his employment.   Moreover, Spectrum has disclosed in its SEC filings that

8  Gagnon is not considered -- under the listing standards of the NASDAQ Global Market and

9  rules promulgated by the SEC -- an independent director.   Thus, Defendant Lenaz is incapable

10  of impartially considering a demand to commence and vigorously prosecute this action against

11  Shrotriya.

12  **Defendant Gueth Lacks Independence From Shrotriya**

13  64.   Gueth and Shrotriya are longtime colleagues.   Gueth serves on the board of

14  directors of Anteres, along with Shrotriya.   Gueth joined Anteres' board in October 2003 and

15  serves as chairman of its compensation committee (since 2003) and as a member of its audit

16  committee and governance and nominating committee (since 2005).   Shrotriya joined Anteres'

17  board in April 2004 and serves as a member of its compensation committee (since 2007), along

18  with Gueth, and a member of its governance and nominating committee (since 2007), along

19  with Gueth.   Thus, Defendant Gueth is incapable of impartially considering a demand to

20  commence and vigorously prosecute this action against Shrotriya.

21  **Defendant Krassner Lacks Independence From Shrotriya**

22  65.   Defendant Krassner is a longtime Director of Spectrum and colleague of

23  Shrotriya.   Krassner has served as a Director of Spectrum for almost 10 years, since December

24  2004, and was previously a member of its Scientific Advisory Board from 1996 to 2001.   Thus,

25

BAILEY❖KENNEDY
3984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

1  Defendant Krassner is incapable of impartially considering a demand to commence and

2  vigorously prosecute this action against Shrotriya.

3       **Defendant Maida Lacks Independence From Shrotriya**

4       66.    Defendant Maida is a longtime director of Spectrum and colleague of Shrotriya.

5  Maida has served as a Director of Spectrum for 10 years, since 2003. Thus, Defendant Maida

6  is incapable of impartially considering a demand to commence and vigorously prosecute this

7  action against Shrotriya.

8       **Defendant Arora Lacks Independence From Shrotriya**

9       67.    Prior to joining Spectrum's Board in June 2010, Arora provided consulting

10  services to Spectrum. Thus, Defendant Arora is incapable of impartially considering a demand

11  to commence and vigorously prosecute this action against Shrotriya.

12  **Likelihood of Substantial Liability of the Audit Committee Defendants**

13       68.    Defendants Arora, Krassner, Maida and Gueth each serve on the Audit

14  Committee of Spectrum's Board. As such, they will take no action against one another or the

15  other members of the Board of Directors or the other Defendants because each member of this

16  Committee breached important specific duties as Audit Committee members. According to

17  Spectrum's Audit Committee Charter the purpose of the Audit Committee is, among other

18  things, to "oversee and monitor…[t]he Company's compliance with legal and regulatory

19  requirements."

20       69.    The Audit Committee failed in these duties by failing to stop, and allowing

21  Defendant Shrotriya to continue, to disseminate false and misleading statements concerning the

22  prospects of its most important product, FUSILEV, all while he was dumping millions of

23  dollars of his personally held company shares. Because of the importance of FUSILEV to the

24  Company's financial performance the Audit Committee would have been aware of all

25  important developments related to same, including the fact that once the availability of

BAILEY❖KENNEDY
3984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

Page 26 of 36

1    leucovorin increased, Spectrum's sales of FUSILEV would plummet.  Defendants Arora,

2    Krassner, Maida and Gueth breached their fiduciary duties of due care, loyalty, and good faith.

3    The Audit Committee possesses and possessed essentially unfettered power to the Company's

4    records and can request additional information or meet with management as it deems necessary

5    to fulfill its responsibilities.  Thus, as The Audit Committee members either knew or should

6    have known that once the availability of leucovorin increased, Spectrum's sales of FUSILEV

7    would plummet given its importance to the Company, yet they failed to prevent or correct the

8    false and misleading issuances.  Such conduct is not protected by the business judgment rule.

9        70.    As a result of the Audit Committee's failures, Defendants Arora, Krassner,

10   Maida and Gueth face a substantial likelihood of liability for breaches of fiduciary duties,

11   making any demand upon them futile.

12   **Additional Likelihood of Substantial Liability of the Compensation Committee Members**

13       71.    Defendants Arora, Krassner and Maida were at times relevant hereto members

14   of the Company's Compensation Committee.  Pursuant to its Charter, the Compensation

15   Committee is and was responsible for, among other things:

16           (a)    Reviewing and evaluating the Company's compensation arrangements.

17           (b)    Determining compensation of CEO and executive officers (as defined by

18   law).

19       72.    The Compensation Committee permitted the continued compensation payments

20   to senior executives, awarded undeserved cash bonuses to Defendants Shrotriya, Keller and

21   Scott, and approved employment agreements, including Defendant Shrotriya's, based on

22   misleading statements and grossly inflated financial results, and in the process, committed

23   corporate waste.

24       73.    In addition, Defendants Arora, Krassner and Maida were members of the

25   Compensation Committee when they agreed to award Defendant Shrotriya with an extravagant

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

Page 27 of 36

compensation package, including $25.2 million in compensation for 2011, based on market capitalization gains and financial results that were created by the temporary shortage of leucovorin and stuffed channels.[2]  As a result, the members of the Compensation Committee have breached their fiduciary duties to the Company and are unable to independently consider a demand for derivative litigation against Defendants.  Moreover, this demonstrates that the Compensation Committee has manifested a direction of corporate conduct in such a manner as to comport with the wishes and interests of Shrotriya to the detriment of the Company and its shareholders.

## Additional Likelihood of Substantial Liability of the Board of Directors

74.    FUSILEV is and was the Company's core product.  In 2011 FUSILEV accounted for $153.1 million of Spectrum's $193 million in total revenues.  In 2012 it accounted for $204.3 million of Spectrum's $267.7 million in total revenues. FUSILEV is admittedly the core indicator of the Company's business condition and the metric that the Company used to measure its current and future financial performance.  Indeed, when the information at issue pertains to a company's core business or service, as it does here, knowledge of that information may be imputed to the entire board through inference as a matter of law.  Thus, each of Spectrum's Board members are charged with having knowledge of the issues described herein related to FUSILEV and the affect that increased availability leucovorin would have on the Company's sales of FUSILEV.

---

[2]  For instance, in addition to their base salaries the officer Defendants were also compensated based on Spectrum's stock price maintaining certain levels over specified periods of time. For 2011, such compensation was tied to Spectrum's market capitalization exceeding $750 million over a specified time period. For subsequent years, the market capitalization target for compensation was $1 billion. Depending on the number of shares outstanding, this meant Spectrum's stock price needed to trade above $13.00 per share. Had Defendants fully disclosed the impact the increased availability of leucovorin would have on the Company's FUSILEV sales, Spectrum's stock would have declined and the Company would have fallen well short of its market capitalization targets.

BAILEY❖KENNEDY
3984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

Page 28 of 36

75.     The Board members of Spectrum approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise these wrongs from Spectrum shareholders or recklessly disregarded the wrongs complained herein, and are therefore not disinterested parties.  Each of the Defendants exhibited a systematic failure to fulfill their fiduciary duties, which could not have been an exercise of good faith business judgment and amounted to extreme recklessness and bad faith.

76.     In order to bring this suit, the Board members of Spectrum would be forced to sue themselves and persons with whom they have extensive business and personal entanglements, which they will not do, thereby excusing demand.

77.     The acts complained of constitute violations of the fiduciary duties owed by Spectrum' officers and directors and these acts are incapable of ratification.

78.     Spectrum has been, and will continue to be subjected to lawsuits for the actions described herein, including securities fraud class action lawsuits, yet the Defendants and current Board have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for Spectrum any part of the damages the Company has suffered and will continue to suffer.

79.     The actions of the Directors and the relationships between and among the Defendants as described above have impaired the Board's ability to validly exercise its business judgment and have rendered it incapable of reaching an independent decision as to whether to accept Plaintiff's demands.

80.     Any suit by the directors of Spectrum to remedy these wrongs would likely expose the Defendants and Spectrum to further violations of securities laws which could result in additional civil actions being filed against one or more of the Board members.  In light of this, they are conflicted in making any supposedly independent determination as to whether to sue themselves.

BAILEY❖KENNEDY
3984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

81.    Indeed, Spectrum has already expended and will continue to expend significant sums of money as a result of the illegal and improper actions described above.    Such expenditures will include, but are not limited to:

(a)    Costs incurred to carry out internal investigations, including legal fees paid to outside counsel and experts; and

(b)    Costs and legal fees for defending Spectrum and certain of the Defendants against private securities class action litigation arising from illegal and improper conduct alleged herein.

82.    Plaintiff has not made any demand on the shareholders of Spectrum to institute this action since demand on the shareholders would be a futile endeavor for the following reasons:

(a)    Spectrum is a publicly held company with millions of shares outstanding, and thousands of shareholders;

(b)    Making demand on such a number of shareholders would be impossible for Plaintiff, who has no way of finding out the names, addresses or phone numbers of all the shareholders; and

(c)    Making demand on all shareholders would force Plaintiff to incur huge expenses, assuming all shareholders could be individually identified.

**COUNT I**
**AGAINST ALL DEFENDANTS FOR BREACH OF FIDUCIARY DUTY FOR DISSEMINATING FALSE AND MISLEADING INFORMATION**

83.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

84.    As alleged in detail herein, each of the Defendants had a duty to ensure that Spectrum disseminated accurate, truthful and complete information to its shareholders.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

85.    Defendants violated their fiduciary duties of care, loyalty, and good faith by causing or allowing the Company to disseminate to Spectrum shareholders materially misleading and inaccurate information through public statements and disclosures as detailed herein.  These actions could not have been a good faith exercise of prudent business judgment.

86.    As a direct and proximate result of Defendants' foregoing breaches of fiduciary duties, the Company has suffered significant damages, as alleged herein.

### COUNT II
### AGAINST ALL DEFENDANTS FOR BREACH OF FIDUCIARY DUTIES FOR FAILING TO PROPERLY OVERSEE AND MANAGE THE COMPANY

87.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

88.    Defendants owed and owe Spectrum fiduciary obligations.  By reason of their fiduciary relationships, Defendants specifically owed and owe Spectrum the highest obligation of good faith, fair dealing, loyalty and due care.

89.    Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

90.    As a direct and proximate result of Defendants' failure to perform their fiduciary obligations, Spectrum has sustained significant damages, not only monetarily, but also to its corporate image and goodwill.

91.    As a result of the misconduct alleged herein, Defendants are liable to the Company.

92.    Plaintiff, on behalf of Spectrum, has no adequate remedy at law.

### COUNT III
### AGAINST ALL DEFENDANTS FOR UNJUST ENRICHMENT

93.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

BAILEY❖KENNEDY
3984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

Page 31 of 36

94.     By their wrongful acts and omissions, the Defendants were unjustly enriched at the expense of and to the detriment of Spectrum.

95.     Plaintiff, as a shareholder and representative of Spectrum, seeks restitution from these Defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits and other compensation obtained by these Defendants, and each of them, from their wrongful conduct and fiduciary breaches.

## COUNT IV
## AGAINST ALL DEFENDANTS FOR ABUSE OF CONTROL

96.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

97.     Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence Spectrum, for which they are legally responsible.   In particular, Defendants abused their positions of authority by causing or allowing Spectrum to misrepresent material facts regarding its business prospects of FUSILEV, the Company's key product.

98.     As a direct and proximate result of Defendants' abuse of control, Spectrum has sustained significant damages.

99.     As a result of the misconduct alleged herein, Defendants are liable to the Company.

100.    Plaintiff, on behalf of Spectrum, has no adequate remedy at law.

## COUNT V
## AGAINST ALL DEFENDANTS FOR GROSS MISMANAGEMENT

101.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

BAILEY❖KENNEDY
3984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

Page 32 of 36

102.   Defendants had a duty to Spectrum and its shareholders to prudently supervise, manage and control the operations, business and internal financial accounting and disclosure controls of Spectrum.

103.   Defendants, by their actions and by engaging in the wrongdoing described herein, abandoned and abdicated their responsibilities and duties with regard to prudently managing the businesses of Spectrum in a manner consistent with the duties imposed upon them by law. By committing the misconduct alleged herein, Defendants breached their duties of due care, diligence and candor in the management and administration of Spectrum's affairs and in the use and preservation of Spectrum's assets.

104.   During the course of the discharge of their duties, Defendants knew or recklessly disregarded the unreasonable risks and losses associated with their misconduct, yet Defendants caused Spectrum to engage in the scheme complained of herein which they knew had an unreasonable risk of damage to Spectrum, thus breaching their duties to the Company. As a result, Defendants grossly mismanaged Spectrum.

## COUNT VI
## AGAINST ALL DEFENDANTS FOR WASTE OF CORPORATE ASSETS

105.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

106.   As a result of the misconduct described above, and by failing to properly consider the interests of the Company and its public shareholders, Defendants have caused Spectrum to incur (and Spectrum may continue to incur) significant legal liability and/or legal costs to defend itself as a result of Defendants' unlawful actions.

107.   As a result of this waste of corporate assets, Defendants are liable to the Company.

108.   Plaintiff, on behalf of Spectrum, has no adequate remedy at law.

BAILEY❖KENNEDY
3984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

Page 33 of 36

## COUNT VII
### AGAINST DEFENDANTS SHROTRIYA, MAIDA AND SCOTT FOR BREACH OF FIDUCIARY DUTIES FOR INSIDER SELLING AND MISAPPROPRIATION OF INFORMATION

109.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

110.    At the time of the stock sales set forth herein, Defendants Shrotriya, Maida and Scott (the "Insider Selling Defendants") were in possession of material, adverse, non-public information described above, and sold Spectrum common stock on the basis of such information.

111.    The information described above was proprietary non-public information concerning the Company's future business prospects with respect to its core product, FUSILEV. It was a proprietary asset belonging to the Company, which the Insider Selling Defendants used for their own benefit when they sold Spectrum common stock.

112.    At the time of their stock sales, the Insider Selling Defendants knew that the Company's forecasts were materially overstated and Spectrum's business prospects were much bleaker than what was disclosed to the public. The Insider Selling Defendants' sales of Spectrum common stock while in possession and control of this material adverse, non-public information was a breach of their fiduciary duties of loyalty and good faith.

113.    Since the use of the Company's proprietary information for their own gain constitutes a breach of the Insider Selling Defendants' fiduciary duties, the Company is entitled to the imposition of a constructive trust on any profits the Insider Selling Defendants obtained thereby.

114.    Plaintiff on behalf of Spectrum has no adequate remedy at law.

BAILEY✦KENNEDY
3984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

Page 34 of 36

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment as follows:

A.     Against all Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of Defendants' breaches of fiduciary duties;

B.     Directing Spectrum to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect the Company and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

C.     Awarding to Spectrum restitution from Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the Defendants;

D.     Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, experts' fees, costs, and expenses; and

E.     Granting such other and further relief as the Court deems just and proper.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

BAILEY❖KENNEDY
3984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

# JURY DEMAND

Plaintiff demands a trial by jury.

DATED this 11th day of April, 2013.

BAILEY❖KENNEDY

By: /s/ Dennis L. Kennedy
    DENNIS L. KENNEDY
    Nevada Bar No. 1462
    JOSEPH A. LIEBMAN
    Nevada Bar No. 10125
    8984 Spanish Ridge Ave.
    Las Vegas, Nevada  89148
    (702) 562-8820  Telephone
    (702) 562-8821  Facsimile

and

    WILLIAM B. FEDERMAN
    FEDERMAN & SHERWOOD
    10205 N. Pennsylvania Avenue
    Oklahoma City, Oklahoma  73120
    (405) 235-1560  Telephone
    (405) 239-2112  Facsimile

    Attorneys for Plaintiff

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

Page 36 of 36

## **VERIFICATION**

I, _Timothy J. Fik_ declare that I have reviewed the Complaint ("Complaint") prepared on behalf of Spectrum Pharmaceuticals, Inc., and I authorize its filing. I have reviewed the allegations made in the Complaint, and to those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely on my counsel and their investigation and for that reason believe them to be true. I further declare that I am a current holder and have been a continuous holder of Spectrum Pharmaceuticals, Inc. common stock during the relevant time period in which the wrongful conduct alleged and complained of in the Complaint was occurring.

_MARCH, 21_, 2013
Date

_(signature)_ TF.
(Signature of Investor)